B. O. Barber *v.* Henry Chase et al.

May Term, 1928.

Present: Watson, C. J., Powers, Moulton, and Chase, JJ., and Thompson, Supr. J.

Opinion filed October 3, 1928.

346

*Fenton, Wing & Morse* for the petitioner.

*Collins M. Graves* for the defendants.

MOULTON, J. This is a petition for mandamus and prohibition, and is based upon the following facts:

The petitioner was appointed and qualified as administrator of the estate of John Tighe on September 24, 1917. In August, 1918, he filed his final account as such administrator in the probate court for the district of Bennington, and the judge thereof, then Edward C. Bennett, assigned September 21, 1918, as the date for examining and allowing the account and for decree of the residue to those lawfully entitled to receive it, and ordered that public notice thereof should be given by publishing the order three weeks successively, previous to the day assigned, in the Bennington Evening Banner, a newspaper published in the district. Through an error of the publisher, however, the order was published only twice before the date assigned, once on August 30, 1918, and once on September 3, 1918. So far as appears, this error was not discovered until after this petition had been brought and issue joined. Some time prior to September 21, petitioner was notified by Judge Bennett that the hearing on the account was postponed, but on a later day the account was examined and allowed, and a decree was signed by Judge Bennett, which recited that:

"Whereas it appears by the records and files of said court, that after the payment of the debts and funeral charges of said deceased, and the expenses of administration of his estate, there remains in the hands of said Administrator personal estate of the value of $798.25.

"And no person having appeared to claim said residue as an heir or otherwise of the said John Tighe.

"It is ordered by said court that the said Administrator pay said residue into the Probate Court as the law directs.

"And said Administrator is ordered to pay over and deliver said estate according to said decree."

In pursuance of this order, the petitioner paid over the sum of $798.25 and received a receipt from Judge Bennett. For some reason, the original decree, with the receipt written upon the back of it, was delivered by Judge Bennett to the petitioner, and was not recorded. Judge Bennett deceased shortly before November 12, 1924, on which day the respondent Henry Chase was appointed his successor, and who now occupies the office of

probate judge for the district of Bennington. What became of the $798.25 we do not know. Beyond the decree and receipt to which we have referred, there is no record of it.

After Judge Chase took office, his attention was called to the fact that the petitioner's account as administrator of the estate of John Tighe was on file, but no decree was to be found. He, therefore, assigned April 28, 1925, as the day for examining and allowing the account, and ordered personal notice of the time and place of hearing to be given all parties interested. Personal notice thereof was given to the petitioner, but to no one else. The hearing was continued from time to time, and on November 23, 1925, the petitioner not being present or represented, the account was examined. Judge Chase found that, after payment of the debts and funeral charges and expenses of administration, there remained for distribution the sum of $1,041.65, which sum the petitioner was ordered to pay to the Town of Pownal (of which town John Tighe was, at his decease, a bona fide resident) for the use and benefit of the schools of that town, since, according to the decree, the estate had escheated in accordance with the statute, G. L. 3420-3422. No appeal was taken from this decree, and the town of Pownal has commenced suit against the petitioner to recover the sum so decreed.

After the petitioner received notice of the hearing from Judge Chase, and before the day when it took place, he went to the probate court and exhibited to him the decree and receipt which he had received from Judge Bennett. He declined to leave the document with the court for filing, saying that it was the only protection he had. Judge Chase took a copy, and at all times thereafter knew of the decree and its contents.

After receiving notice of the decree of November 23, 1925, the petitioner by his attorney presented Judge Bennett's decree to Judge Chase, and respondent Blanche L. Curtis, who was then, and is now, the register of probate, tendered the required fees and demanded that it should be recorded. The decree was received, and indorsed, "Filed in Court Oct. 3rd, 1927, Blanche L. Curtis, Register," but although subsequent demands were made on petitioner's behalf for its record, Judge Chase has refused to do so, although the decree has remained on file.

The petitioner seeks a writ of mandamus to compel Judge Chase and Miss Curtis, the register, to record the Bennett decree; and a writ of prohibition to restrain the town of Pownal

and the selectmen thereof from prosecuting their suit against him, based upon the decree of November 23, 1925.

The statute, G. L. 3276, does not prescribe any particular form or manner of notice of the settlement of an administrator's account to be given to interested parties. It provides only that notice shall be given "and such notice may be given personally to said interested persons, or by public notice, as the court directs." But it is unnecessary to consider the question of the shortage of the published notice in this case, because it is not by the petition and answers made an issue between the petitioner and the respondents Chase and Curtis. The writ of mandamus is sought only as against these. The petition, in the third section thereof, alleges that the notice was caused to be published three times "to wit, on the 30th day of August, 1918, and the 6th and 13th of September, 1918." In the answer of respondent Chase, he "neither admits nor denies the allegations contained in paragraph three of the plaintiff's petition but leaves the plaintiff to his proof of the same," and respondent Curtis in her answer says:

"That as to the allegations contained in paragraph * * * * * three * * * * * of the plaintiff's petition this defendant has no knowledge and therefore neither admits nor denies."

A mandamus proceeding is an action at law, and the complaint, answer and subsequent pleadings are to be governed by the rules of the common law, and must contain in substance the essentials of good pleading in an ordinary action at law. Facts alleged in the complaint as to which the defendant answers that he neither admits nor denies, but calls upon the petitioner for his proof, are in the eye of the law admitted to be true. Each party directly admits all such traversable allegations on the opposite side as he does not traverse, and, under this rule, argumentative denials are not enough. To refuse to admit or deny an allegation is, in legal effect, a refusal to answer at all. *Clement* v. *Graham*, 78 Vt. 290, 305, 308, 309, 63 Atl. 146, Ann. Cas. 1913E, 1208.

Cases are tried in court upon the issues joined by the parties. *Brown* v. *Aitken*, 90 Vt. 569, 573, 99 Atl. 265; *Powell* v. *Rockwell*, 97 Vt. 528, 530, 124 Atl. 567; *Milligan* v. *Clogston*, 100 Vt. 455, 459, 138 Atl. 739. They are not to be

decided upon an issue outside the pleadings. *Dodge Bros.* v. *C. V. Ry. Co.*, 92 Vt. 454, 458, 104 Atl. 873; *Smith* v. *C. V. Ry. Co.*, 80 Vt. 208, 219, 67 Atl. 535; *Milligan* v. *Clogston, supra.* The admission, by the answer, of a fact alleged in the complaint, is a judicial admission, and binding and conclusive. *Oakes* v. *Buckman*, 87 Vt. 187, 190, 88 Atl. 736; *Brown* v. *Aitken, supra; Salisbury* v. *Button*, 97 Vt. 9, 11, 121 Atl. 435.

Thus it follows that, so far as the respondents Chase and Curtis are concerned, the decree of Judge Bennett was founded upon sufficient notice, for the publication, as alleged in the petition, has been held to be "public notice," to all persons interested, of the time and place of examining and allowing the account and making decree of distribution, and sufficient under the provisions of G. L. 3276. *In re Warner's Estate*, 98 Vt. 254, 261, 127 Atl. 362, and cases therein cited.

The town of Pownal and the selectmen thereof have not, in their answer, admitted the truth of paragraph 3 of the complaint, but have expressly denied it. A writ of prohibition, not one of mandamus, is sought against them. But such a writ lies to prevent the unlawful assumption of jurisdiction of a cause, or of a collateral matter incidental thereto, by an inferior court, as is fully explained in *Bullard* v. *Thorpe*, 66 Vt. 599, 601, 30 Atl. 36, 25 L. R. A. 605, 44 A. S. R. 867; *Wilkins* v. *Stiles*, 75 Vt. 42, 47, 52 Atl. 1048, 98 A. S. R. 804, and *Leonard* v. *Willcox*, 101 Vt. 195, 142 Atl. 762, 766. There is no claim or suggestion that the court to which the selectmen have brought their suit against the petitioner has not jurisdiction over the cause, and so the writ of prohibition is not appropriate to the situation before us.

The reason for the discrepancy between the sum of $798.25, ordered by Judge Bennett to be paid into court, and that of $1,052.25, for which Judge Chase held the petitioner chargeable, clearly appears by the latter's account as administrator, and by the order of Judge Chase thereon. On September 24, 1917, the petitioner paid "Probate Court—Inheritance Tax, etc., $254.00," and on December 19, 1917, he paid "Probate Court—for investment $500.00." The latter item was evidently included in the order of Judge Bennett that he should pay the residue of $798.25 into court, because the account, after deducting the two items above mentioned, showed a balance of $298.25. Judge Chase disallowed the items of $254.00 and $500.00 and

treated the balance of $298.25 as an asset in the hands of the petitioner, thus arriving at the sum of $1,052.25. From this the costs of the court were deducted, and the remainder $1,041.65 was decreed to the town of Pownal.

In order to justify the issuance of a writ of mandamus, it must be made to appear that the duty to record the decree is a ministerial one (*Clement* v. *Graham*, 78 Vt. 290, 318, 63 Atl. 146, Ann. Cas. 1913E, 1208; *Burlington* v. *Mayor of Burlington*, 98 Vt. 388, 404, 127 Atl. 802), and that the petitioner has a clear legal right to the performance of the duty and the law affords him no other remedy. *Burlington* v. *Burlington Traction Co.*, 98 Vt. 24, 36, 124 Atl. 857; *Grout* v. *Gates*, 97 Vt. 434, 453, 124 Atl. 76; *Bankers' Life Ins. Co.* v. *Howland*, 73 Vt. 1, 19, 48 Atl. 435, 57 L. R. A. 374. Preliminary to these questions is that of the validity of the decree signed by Judge Bennett. Mandamus does not lie to compel the entry of a void order. *State* v. *School Comm.*, 19 Ala. App. 528, 98 So. 654, 656.

A court of probate does not proceed according to the common law, but has a special and limited jurisdiction given by the statute; and if it appears on the face of the proceedings that it has proceeded in a manner prohibited or not authorized by law, its orders and decrees are absolutely void, and may be treated as a nullity. *White* v. *White*, 91 Vt. 74, 77, 99 Atl. 305; *Probate Court* v. *Winch*, 57 Vt. 282, 284, 285; *Hendrick* v. *Cleaveland*, 2 Vt. 329, 338. There is no presumption of jurisdiction as to courts of special and limited powers (*Barrett* v. *Crane*, 16 Vt. 246, 252, 254), and, when such courts exceed their jurisdiction, their whole proceedings are *coram non judice* and void. *Walbridge* v. *Hall*, 3 Vt. 114, 120; *Barrett* v. *Crane*, *supra*.

It is said in *In re Wooley*, 96 Vt. 60, 63, 117 Atl. 370, 371:

"Generally speaking, when a court has jurisdiction of the parties and the subject-matter, its judgments and decrees, however erroneous, cannot be impeached in a collateral proceeding. But to effect this result, the court must have authority to render the particular judgment or decree that is assailed; or, in other words, orders or judgments which the court has not the power under any circumstances to make or render are void, and their nullity can be as-

serted in any collateral proceeding where they are relied on in support of a claim. * * * * This lack of authority to make or render a particular order or judgment is akin to lack of jurisdiction of the subject-matter.''

And in *Windsor* v. *McVeigh,* 93 U. S. 274, 23 L. ed. 914, 917, 918, occurs this language by Mr. Justice Field:

''The doctrine invoked by counsel, that, where a court has once acquired jurisdiction, it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but, like all general propositions, is subject to many qualifications in its application. All courts, even the highest, are more or less limited in their jurisdiction * * *. Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments: It must act judicially in all things, and cannot then transcend the power conferred by the law * * * *. The doctrine stated by counsel is only correct when the court proceeds, after acquiring jurisdiction of the cause, according to the established modes governing the class to which the case belongs, and does not transcend, in the extent or character of its judgment, the law which is applicable to it.''

To the same effect are *United States* v. *Walker,* 109 U. S. 258, 27 L. ed. 927, 930, 3 Sup. Ct. 277; *Draper* v. *Clayton,* 87 Neb. 443, 127 N. W. 369, 29 L. R. A. (N. S.) 153, 157; *Charles* v. *White,* 214 Mo. 187, 112 S. W. 545, 21 L. R. A. (N. S.) 481, 488, 489, 127 A. S. R. 674; *Russell* v. *Shurtleff,* 28 Col. 414, 65 Pac. 27, 89 A. S. R. 216, 218.

Accordingly it was held, in *Probate Court* v. *Winch, supra,* that a decree of distribution which included money received as proceeds of the sale of the homestead and of the widow's third of personal estate was without authority of law, and so beyond the jurisdiction of the probate court to make, and void. And in *Hendrick* v. *Cleveland, supra,* a decree assigned one-half of the real estate of a deceased husband to a widow in fee, instead of the use of one-third thereof for life, as the statute then required. The Court said (2 Vt. 338):

"But on the face of the decree, the proceeding appears to be not simply an erroneous exercise of authority given the court, but an assumption of power not authorized by law * * *. Surely, such a proceeding is not to be considered an erroneous act merely, which must be corrected on appeal, but is a nullity upon the very face of it."

In accord are *Hunt* v. *Hapgood*, 4 Mass. 117, 122; *Sumner* v. *Parker*, 7 Mass. 79, 83, 85; and *Smith* v. *Rice*, 11 Mass. 507, 513, cited in the foregoing opinion.

Other cases of like tenor dealing not with orders or judgments of probate courts, but with those of other bodies of judicial or quasi judicial powers, having special and limited jurisdiction are: *Barrett* v. *Crane, supra* (a court martial); *Sayers* v. *M. and W. R. R. Co.*, 90 Vt. 201, 209, 210, 97 Atl. 660, Ann. Cas. 1918B, 1050, and *W. Rutland* v. *Rutland Ry. L. & P. Co.*, 96 Vt. 413, 422, 121 Atl. 755 (the Public Service Commission).

To quote from *Voorhees* v. *Jackson*, 10 Pet. 449, 9 L. ed. 490, 500:

"The line which separates error in judgment from the usurpation of power, is very definite, and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity, collaterally, when it is offered in evidence in an action concerning the matter adjudicated, or purporting to have done so."

The administration account filed by the petitioner shows that the item designated as "inheritance tax" was paid to the probate court on September 24, 1917, which was the same day upon which he was appointed and qualified as administrator. Obviously, this was irregular. Inheritance taxes are not payable until the legacies or distributive shares and the persons entitled to receive them are ascertained. G. L. 1090, 1091, 1095. This cannot be done until the amount of the assets and liabilities of the estate is known. Furthermore, the tax is to be paid by the administrator to the State treasurer, who must deliver to him a receipt in triplicate (G. L. 1127), one copy of which must be filed with the probate court, before the final administration account can be allowed G. L. 1100. The probate

354

court is required to find that this has been done. G. L. 1100. Nothing of this appears in the record before us. In fact, the contrary is plainly implied. Therefore the decree, in so far as it approved and allowed the administration account, was without authority of law.

So, too, the order directing the administrator to pay the balance into court, which, as we have seen, included the item of $500 already paid into court "for investment," was entirely unauthorized by statute. Since it was ascertained that there were no claimants to the estate, it was the duty of the administrator to retain the balance in his possession until the town of Pownal should bring the petition for an escheat authorized by G. L. 3420. It was entirely beyond the authority of the probate court to order him to do otherwise. Why this extraordinary order was made does not appear, and it is profitless now, several years after the event, to indulge in conjecture with regard to it. It is enough to say that, so far as any account thereof is concerned, the sums above mentioned have entirely disappeared.

We hold that the decree of Judge Bennett was *coram non judice* and void. It was beyond the jurisdiction of the probate court to make. It was not simply an erroneous exercise of authority, but an assumption of power not authorized by law. As such, it was a nullity.

This situation is to be distinguished from that presented where the decree authorizes the administrator to distribute the estate to one or more heirs, to the exclusion of others who are entitled to take. See *Cleaveland* v. *Draper*, 194 Mass. 118, 80 N. E. 227.

The probate court has jurisdiction to order the estate distributed to the heirs or legatees, and if, in so doing, some are omitted, this is a mistake of law or of fact, and while such decree may be erroneous, it is not a nullity. But in the case before us, the court went beyond its statutory authority. It did not attempt to distribute the estate to anyone entitled by statute to receive it, but made an order which has no sanction in law.

Nor does the absence of an appeal affect the matter. If we assume that the town of Pownal had the right to appeal from the decree, still the want of jurisdiction, especially of a court of limited and special jurisdiction, cannot be aided by

the failure to do so. *Sigourney* v. *Sibley,* 21 Pick. (Mass.) 101, 106, 32 A. D. 248.

 The petitioner, however, complied with the order, and nothing appears in the case to impugn his good faith in so doing. The general rule is that a decree of distribution, however erroneous, with which an administrator complies in good faith, protects him. *Cleaveland* v. *Draper,* 194 Mass. 118, 122, 80 N. E. 227; *Harris* v. *Starkey,* 176 Mass. 445, 447, 57 N. E. 698, 79 A. S. R. 322; *Lamson* v. *Knowles,* 170 Mass. 295, 49 N. E. 440; *Loring, Admr.* v. *Steineman,* 1 Metc. (Mass.) 204, 207; *Ferguson* v. *Yard,* 164 Pa. 586, 30 Atl. 517, 518; *In re Piper's Estate,* 208 Pa. 636, 57 Atl. 1118, 1119; *Garrett* v. *Kerney,* 107 Md. 501, 68 Atl. 1051, 1055. But, where the decree is void, the rule is otherwise. Since the authority to act is a nullity, everything done in pursuance to it is of no effect, and affords no protection to the administrator. *In re Killan,* 172 N. Y. 547, 65 N. E. 561, 562, 563, 63 L. R. A. 95; *Johnson* v. *Weir,* 34 Misc. Rep. 683, 70 N. Y. S. 1020, 1021; *In re Bell's Estate,* 142 Cal. 97, 75 Pac. 679, 680; *Matter of Spanier's Estate,* 120 Cal. 698, 53 Pac. 357, 358, 359; *In re Kennedy's Estate,* 120 Cal. 458, 52 Pac. 820, 821, 822; *O'Brien Bros.* v. *Wilson,* 86 Miss. 540, 38 So. 509, 511; *Faver* v. *Parker,* 101 Tenn. 141, 46 S. W. 453, 454; *In re Sullivan's Estate,* 36 Wash. 217, 78 Pac. 945, 946, 947; *Boales* v. *Ferguson,* 55 Neb. 565, 76 N. W. 18, 19; *Sapp* v. *Williamson,* 128 Ga. 747, 58 S. E. 447, 450, 451. It is the same in principle as the rule that "where a mere ministerial officer acts under the authority of a court, or other board or tribunal of a limited jurisdiction, then if the act be beyond their jurisdiction, he is, or may be, liable in trespass." *Brown* v. *Mason,* 40 Vt. 157, 162; *Thurston* v. *Martin,* 5 Mason 497, 500, Fed. Cas. No. 14,018.

It is undeniably, and regrettably, true that the operation of this doctrine, may, and oftentimes will, work a hardship upon the administrator who has innocently obeyed a void order of the court. But that this should be so is unavoidable. It is said in *Jochumsen* v. *Suffolk Savings Bank,* 3 Allen (Mass.) 87, 95, in dealing with a decree appointing an administrator, subsequently held to be void that:

> "If it be urged that a refusal to give conclusive effect to a decree of court appointing an administrator may

356

operate most injuriously upon innocent parties, who have acted in reference to them, and given them full faith and credit, it may be replied that such is always the effect of holding judgments and decrees void for want of jurisdiction."

And, after all, it is not unreasonable also to consider the rights of those legally entitled to the estate, if they are to be deprived of their property by a decree unauthorized by law.

*Petition dismissed with costs.*